J-A03015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ZOYA M. YOUNES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN S. DOWNS | : | No. 2537 EDA 2024 |

Appeal from the Order Entered August 22, 2024
In the Court of Common Pleas of Northampton County
Civil Division at No: C-48-CV-202102767

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 1, 2025**

Appellant, Zoya M. Younes ("Mother"), appeals from the August 22, 2024, order that denied her petition for special relief seeking limited sole legal custody for the purpose of enrolling her three-year-old daughter, A.L.D. ("the Child"), in the full-time preschool program of her choice.[1]  Upon review, we affirm in part and vacate in part.

We summarize the relevant factual and procedural history of this matter from the certified record as follows.  Child was born in October 2020, to Mother and Justin S. Downs ("Father"), who were not married.  Mother initiated the underlying custody action against Father on April 8, 2021, which resulted in

---

[1] The certified record demonstrates that the parties utilize "preschool" and "daycare" interchangeably when arguing their positions regarding the best interests of then three-year-old Child.  For consistency, we utilize "preschool."

an agreed-upon interim order awarding the parties, *inter alia*, shared legal custody and Mother with primary physical custody of the Child subject to Father's periods of partial physical custody on alternating weekends. **See** Interim Order, 5/27/21. This interim order became final 180 days later, and the parties co-parented amicably until the summer of 2024.

On July 2, 2024, the preschool where the Child had been enrolled, Lightbridge Academy ("Lightbridge"), informed Mother that, as of August 22, 2024, Child, then age three, was no longer permitted to attend.[2] **See** N.T, 8/14/24, at 10-11. Mother contacted Father via Our Family Wizard ("OFW"), and the parties attempted to resolve the preschool issue. **See id.** at 15. Mother researched three preschools and told Father her preference was the Swain Campus of Moravian Academy ("Swain").[3] **See** Mother's Exhibit 4. Father told Mother he did not approve.[4] **See id.**

Accordingly, on July 23, 2024, Mother filed a petition for special relief pursuant to Pa.R.C.P. 1915.13 (Special Relief) requesting "limited sole legal

_____

[2] Mother testified that she believes Lightbridge terminated the Child's enrollment because she had lodged various complaints about the teachers. **See** N.T, 8/14/24, at 11-13.

[3] Mother did not present any meaningful testimony related to the other two options.

[4] The parties' OFW communications merge a discussion of the current issue before the trial court, *i.e.*, where the Child will attend preschool, with a discussion about the Child's education when she is of formal schooling age. **See** Mother's Exhibit 4.

custody for the purpose of enrolling the [C]hild in the full-time preschool program of her choice" or for the court to "[d]irect[] the parties to enroll the [C]hild [at Swain] no later than August 22, 2024." On August 13, 2024, Father filed an answer to Mother's petition.

On August 14, 2024, the trial court held a hearing on Mother's petition. Mother and Father were present and represented by counsel. Each testified on their own behalf. Mother averred that she intended to move towards the "Fogelsville area" in the next month and focused on preschools that were in that geographic vicinity. *See* N.T., 8/14/24, at 15. In noting her preference for Swain, she emphasized the school's "evidence-based best practices," curriculum, engagement with parents, and security. *See id.* at 16-17. Mother testified that tuition at Swain is $21,629 per year, whereas Lightbridge cost approximately $16,000 per year. *See id.* at 19-20.

Mother testified that she only presented three options to Father because she was frustrated with him and his lack of engagement in finding an appropriate preschool for the Child. *See id.* at 21. Mother also confirmed that she is merely seeking her enrollment preference for the Child with respect to preschool, not the entirety of the Child's schooling. *See id.* at 22. While Mother admitted that she hopes that the Child will attend private school "K through 12," she clarified that she would advocate for private school should there be a disagreement with Father when the Child is of school age. *See id.* at 25-26.

- 3 -

Father testified that he did not believe the three options Mother presented were best for the Child. *See id.* at 34. He stated that he was unsure where Mother intended to move so he did some preliminary research on preschool programs, but he had not presented this information to Mother. *See id.* at 35-37. He testified that he found a few options with availability, although he could not recall the names of the facilities. *See id.* Father emphasized that, beyond financial concerns, his OFW communications with Mother presented his full perspective regarding why he believed the options offered by Mother were not in the Child's best interest. *See id.* at 40, 49.

In these messages, Father expressed his desire for the Child to be around children of varying socioeconomic, ethnic, and religious backgrounds that he did not believe would be represented at the institutions Mother had proffered. *See* Mother's Exhibit 4. Further, Father repeatedly requested that Mother provide additional options as he did not approve of Mother's choices. *See id.* Father also confirmed that the Child is not yet of school age, that it would be a couple years before she would even be able to attend a public school. *See* N.T., 8/14/24, at 41-42.

On August 22, 2024, the court entered the subject order, as follows.

1. [Mother]'s [p]etition for [s]pecial [r]elief is **DENIED**.

2. It is further **ORDERED** that unless otherwise agreed upon by the parties in writing, the Child shall be enrolled in public school for all academic purposes regardless of grade.[1]

3.      For daycare and childcare needs, the parties shall be allowed to enroll the Child in an agreed upon childcare facility that is compliant with paragraph two of this Order.[2]

> [1] The [c]ourt has no position on the relative merits of private school education versus public school education and does not decide this matter based upon this issue.  The [c]ourt bases its decision upon the cost of private daycare programs, based upon the cost of [Mother]'s proposed daycare program, and the immediate financial burden to be placed on [Father] as well as [Mother]'s testimony that she intends to continue the Child's private school education beyond daycare and the attendant future costs of such education plan to be placed on [Father].

> [2] For clarity, the parties shall not enroll the Child in a privately-affiliated daycare facility such as the facilities suggested [b]y Mother.

Order, 8/22/24.

On September 20, 2024, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In response, on October 7, 2024, the trial court submitted a Rule 1925(a)(2)(ii) statement, elaborating on its reasoning for the August 22, 2024 order.

On appeal, Mother asserts the following issues for our review:

1. Did the trial court abuse its discretion by basing its decision solely on financial considerations without considering the best interests of the Child?

2. Did the trial court abuse its discretion by entering an order far beyond the scope of the petition for special relief?

3. Did the trial court abuse its discretion by prohibiting the parties from enrolling the Child in "any privately-affiliated daycare facilities"?

Mother's Brief at 5-6 (cleaned up).

"We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski v. Kirven*, 291 A.3d 50, 61 (Pa. Super. 2023) (internal citation and quotation omitted).

"It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)). "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Rogowski*, 291 A.3d at 60-61 (citation omitted).

In her first issue, Mother claims the court abused its discretion by denying her petition for special relief because it failed to consider the best interests of the Child. *See* Mother's Brief at 16-17. Specifically, she contends that the court was required to examine the custody factors delineated in the Custody Act, 23 Pa.C.S.A. § 5328(a), because "any determination made under [Rule 1915.13] is a custody determination, and consideration of the factors is

- 6 -

necessary."[5]  ***Id.*** at 18.  In any event, Mother claims that the order is contrary

to the best interest of the Child.  ***See id.*** at 22-25.  We disagree.

It is well-established that Section 5328(a) sets forth sixteen factors that

a court must consider prior to modifying an existing custody order.  ***See*** 23

Pa.C.S.A. § 5328(a).  However, this Court has explained:

> Many custody-related issues raised in motions are similar to the
> one in [this] case: a single discrete and narrow issue ancillary to
> the award of custody.  It would be burdensome for a trial court to
> have to consider all sixteen factors explicitly on the record every
> time a litigant argues a motion seeking, for example, to change
> the custody exchange location or to decide whether a child plays
> sports in one parent's municipality or the other's.  Without a
> doubt, a trial court must consider a child's best interest in ruling
> upon such motions.  **But our statutes require neither a
> consideration of all sixteen factors nor delineation of the
> court's rationale on the record unless the ruling awards
> custody or modifies an award of custody.**

***M.O. v. J.T.R.***, 85 A.3d 1058, 1063 n.4 (Pa. Super. 2014) (emphasis added).

_____

[5] Mother also contends that the court's financial conclusions are not supported by the certified record.  ***See*** Mother's Brief at 21.  Mother cites to a non-precedential decision of this Court in a child support matter, ***Salgado v. Evans***, 219 A.3d 241, 2019 WL 2516777 (Pa. Super. 2019) (unpublished memorandum), for the proposition that the price increase from Lightbridge to Swain is nominal based on the parties' income.  ***See*** Mother's Brief at 20-21. To the extent that Mother relies on ***Salgado***, we find her comparison inapt. In contrast to the instant school choice case, ***Salgado*** solely involved a child support matter wherein the trial court was not required to analyze or consider the best interests of the child.  ***See Salgado***, 2019 WL 2516777 at *1-*2 (discussing only child support obligations).  As such, we find that case inapposite.

In this case, Mother raised her custody-related issue, the selection of Child's preschool, in a petition for special relief pursuant to Rule 1915.13.[6] Similarly, in **S.W.D.**, **supra**, the father raised the issue of the child's school selection in a petition for special relief. In that case, the trial court resolved the dispute without modifying the shared legal custody awarded between the parties. In reliance upon **M.O.**, this Court reasoned:

> While the choice of where a child will attend school is not trivial and certainly is a major life decision, the court's decision here merely resolved an impasse between the parties who shared the legal right to make this decision. Stated another way, the trial court merely arbitrated a dispute between Mother and Father regarding schooling, instead of granting one of them the right to make that decision.

**See S.W.D.**, 96 A.3d at 403-404; **see also M.S. v. D.R.**, 236 A.3d 1118, 2020 WL1934389 (Pa. Super. 2020) (unpublished memorandum) (concluding that because the trial court "merely resolved an impasse between the parties who shared the legal right to make this decision" rather than granting one

---

[6] Rule 1915.13 provides the following:

> At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody; the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court; and a direction that a person post security to appear with the child when directed by the court or to comply with any order of the court.

**Id.**

party sole legal custody to make the decision, the trial court was not required to engage in an analysis of the Section 5328(a) custody factors).

Here, similar to **S.W.D.** and **M.O.**, the trial court did not alter legal custody when it denied Mother's request for limited sole legal custody to choose the Child's preschool.   Instead, the trial court ruled on a "single discrete and narrow issue ancillary to the award of custody."  **M.O.**, 85 A.3d at 1063 n.4.   Therefore, it was not required to analyze the Section 5328(a) custody factors.  **See id.**  Thus, Mother's claim fails.

To the extent that Mother argues that the court's denial of her request for the Child to attend preschool at Swain was contrary to the Child's best interest, and based solely on financial considerations, we disagree.  The court provided the following analysis:

> Mother submits that the court abused its discretion by denying her motion based on financial considerations.  To further expand upon the subject order, Mother failed to convince the court that the 3-year-old child's enrollment [at Swain], or any of her other proposed private preschool programs, would be necessary for the child's education and overall development.  Mother presented absolutely no statistics, school rankings, or education curriculum to support her desire for private schools.  Mother also failed to make a good faith effort to look into alternative preschool options that would be agreeable to Father.  As a result, Mother's position is completely unsupported.

Trial Court Opinion, 10/7/24, at 1 (unpaginated).  The court further reasoned that "[w]hen a parent acts in a way that is financially reasonable for an entire family unit, that parent is acting in the best interest of the child.  Overall, in ruling against Mother, the court has found that Mother failed to prove that the

Child's enrollment [at Swain] is in the Child's best interest." ***Id.*** at 2 (unpaginated). We discern no error or abuse of discretion.

Other than her own statements regarding Swain's curriculum, support, and security, Mother did not submit any statistics, rankings, or formal curriculum regarding Swain. Further, Mother testified that tuition at Swain is $21,629 per year, or almost $6,000 more than Child's former preschool, Lightbridge. ***See*** N.T., 8/14/24, at 19-20; ***see also***, Trial Court Opinion, 10/7/24, at 2 n.1 (unpaginated). Mother also testified that despite Father's issues with the preschools she proposed, she did not attempt to find alternative facilities for the Child. ***See*** N.T., 8/14/24, at 21, 24-25. Indeed, Mother's only well-stated justification for enrolling the Child in Swain appears to be the mere fact that the Child could no longer attend Lightbridge, which she believed was due to her own conduct. ***See id.*** at 11-13.

Mother also contends that the tuition increase at Swain represents a nominal increase based on their stated incomes. However, it is clear that the court determined that such a price increase for a three-year-old to attend a preschool program was not reasonable, especially considering the lack of evidence presented by Mother regarding potential benefits to the Child.

As related *supra*, "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its

discretion[.]" ***King***, 889 A.2d at 632 (citation omitted). As the trial court's findings are supported by the certified record, we discern no error or abuse of discretion in concluding that the Child's best interest does not require that she attend preschool at Swain. Therefore, Mother's first issue fails.

Next, Mother asserts that the trial court abused its discretion when it ordered the Child "to be enrolled in public school for all academic purposes regardless of grade." ***See*** Mother's Brief at 25; Order, 8/22/24. Mother contends that the trial court violated her guarantee of due process under the Fourteenth Amendment of the United States Constitution because her special relief petition merely asked the court to make a determination regarding where the Child would attend preschool. ***See*** Mother's Brief at 26 (citing ***E.B. v. D.B.***, 209 A.3d 451, 463 (Pa. Super. 2019)). She argues that she was unprepared and did not have a meaningful opportunity to address the issue of private versus public education. ***See id.*** at 26-27. She also emphasizes that Rule 1915.13 is intended to provide for temporary relief, as opposed to wholesale custody modifications. ***See id.*** at 27-28. We agree.

The trial court explained that "[i]t is clear from the testimony that Mother wishes for the [C]hild to be enrolled in a preschool program that has an associated private school K-12 program and wishes to continue the [C]hild's enrollment in private school past preschool." Trial Court Opinion, 10/7/24, at 2 (unpaginated). The court further determined the following:

> Mother submits that the court's order was outside the scope of the relief requested and constituted permanent injunctive relief. . . .

Mother may petition for modification of the court's order at any time. The court entered its order to establish a status quo such that the parties would not be required to return to court every year in order to argue this same issue, although Mother may choose to do so through a future petition for modification.

*Id.*

The explanatory comment to Rule 1915.13 states that the rule is intended to be a "broad provision empowering the court to provide special relief where appropriate." Pa.R.C.P. 1915.13. Even still, "due process is required during custody proceedings." *E.B.*, 209 A.3d at 463. In *E.B.*, this Court explained the requirements of due process:

We have previously described due process as "a concept incapable of exact definition. Rather, it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." *Plowman [v. Plowman]*, 597 A.2d [701,] 705 [(Pa. Super. 1991)]. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). This means that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine witnesses." *Id.* (citation omitted).

*Id.*

In the instant case, Mother petitioned the court to resolve a disagreement with Father regarding where the Child would attend preschool. Although discussions with respect to preschool may trigger related discussions concerning where the Child will ultimately attend school once she is of age, the request for the court was limited to preschool. Neither party requested

that the court expand its ruling beyond what the petition requested. Indeed, Mother testified to the following on direct examination:

> Q: Do you know when [the Child] is expected to start kindergarten?
>
> A: She's -- she's still three right now. I want to say maybe two years.
>
> Q: And you understand that if the court were to allow this, this is only for childcare. This isn't actually a decision on where she goes to school; you understand that?
>
> A: Yes.
>
> Q: And you understand that even if she did go to Swain for preschool, there may have to be a separate proceeding if there's a dispute over school choice later?
>
> A: Yes.

N.T., 8/14/24, at 22.

Where the Child ultimately attends school for kindergarten, or any other grade for that matter, was not within the purview of the court. As such, the parties were not prepared to address that question in a meaningful manner. *See E.B.*, 209 A.3d at 463. Therefore, we conclude that the trial court erred in ordering "that, unless otherwise agreed upon by the parties in writing, the Child shall be enrolled in public school for all academic purposes regardless of grade." Order, 8/22/14 (footnote emitted). Thus, we vacate paragraph two of the trial court's August 14, 2024, order.

In her final issue, Mother contends the trial court erred in ordering that "the parties shall not enroll the Child in a privately-affiliated daycare facility

such as the facilities suggested by Mother." Mother's Brief at 36. She asserts that the court unreasonably limits options that would promote the Child's best interests. *See id.* at 37. She also argues that the trial court's conclusions are not supported by the record. *See id.* Specifically, she takes issue with the trial court's finding that "[a]ll of Mother's suggested preschools had an accompanying private school." *Id.* at 38; Trial Court Opinion, 10/7/24, at 3 (unpaginated).

In its Rule 1925(a) opinion, the trial court explained its rationale behind the final provision of the August 22, 2024, order, as follows:

> This court has said that Mother is precluded from enrolling the Child in a preschool program that has an associated private elementary school. . . . All of Mother's suggested preschools had an accompanying private school. Mother made clear in her testimony that the Child's enrollment in a preschool program such as Swain is a precursor to a fully private education. This is what the court intended to prevent by requiring the parties to find an alternative option. This court wants to emphasize the core difference in privately owned daycare facilities and daycare/preschool programs that are directly associated with a private school.

Trial Court Opinion, 10/7/24, at 3 (unpaginated).

A review of the certified record reveals that there is no evidence that the other two preschool programs Mother presented are associated with accompanying private schools. As aptly stated by Mother, the court's explanation for the third paragraph of its order is focused on her desire for the Child to attend private school in the future, rather than the best interest of the Child as required in custody decisions. *See Rogowski*, 291 A.3d at 61.

As the trial court's findings are not supported by the record and the court does not attempt to rationalize its decision based on the best interest of the Child, we further vacate the third paragraph of the August 14, 2024, order.

Based on the foregoing, we affirm paragraph one of the trial court's order denying Mother's petition for special relief, and vacate paragraphs two and three.

Order affirmed in part and vacated in part.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2025